IRMA MUELLER v. CHICAGO, BURLINGTON & NORTHERN
RAILROAD COMPANY.

December 22, 1898.

·Nos. 11,313—(176).

**Railway—Mileage Ticket—Unlawful Use—Question for Jury.**

Plaintiff bought a mileage ticket from defendant with the funds of a ticket scalper, paid the scalper for the mileage used on one trip, and deposited the remainder of the mileage with him on her return. Thereafter he permitted another to use a part of the remaining mileage, contrary to the terms of the contract with defendant; which contract provided that for such use the ticket should be forfeited. Thereafter plaintiff undertook to use the remainder of the mileage on another trip, when it was taken up, and she was compelled to pay fare, under threat of being put off the train. She testified that, by the terms of her agreement with the scalper, she was to use the ticket, and pay him for each trip as she used it, and he and she testified that he had no authority from her to permit others to use it. *Held*, on the evidence and circumstances, it was a question for the jury whether she or the scalper owned the ticket, and, if she owned it, whether she had authorized the scalper to permit others to ride

on it. *Held*, further, if she owned the ticket, and he had no such authority, the ticket was not forfeited.

**Same—Verdict Excessive.**

*Held*, the damages awarded for threatening to put her off the train, and compelling her to pay fare, are excessive.

Action in the district court for Hennepin county to recover $2,034.10. The cause was tried before Johnson, J., and a jury, which rendered a verdict for $213.01 in favor of plaintiff. From an order denying a motion for a new trial, defendant appealed. Modified.

*Young & Lightner*, for appellant.

*F. A. Gilman*, for respondent.

CANTY, J.

The plaintiff boarded defendant's railroad train as a passenger, and presented, in payment of her fare, a mileage book or ticket which had been issued to her, but the conductor claimed that the book had been forfeited because another had been allowed to use it contrary to its terms. He retained the book, and demanded that she pay her fare or be put off the train. She then paid it in money, and rode to her destination. She brought this action to recover damages claimed by reason of the foregoing facts, and had a verdict for $213.01, which, on a motion for a new trial, the court reduced to $123.21, as a condition of denying the motion. Plaintiff consented to the reduction, and defendant appeals from the order denying a new trial.

1. The ticket in question was a 2,000-mile ticket. In May, 1896, plaintiff was about to make a trip from Minneapolis to Chicago and return. She applied to T. C. Shove, a ticket broker or scalper. The cost of the 2,000-mile ticket was $50, with the right to a return of $10 when the ticket was used up. Shove gave her $35, and an unused portion of an old ticket, which she took to defendant's ticket office, and received therefor the ticket in question, the agent allowing her $15 for the unused portion of the old ticket. She then rode on the new ticket to Chicago and return, using 804 miles of the mileage. She then delivered the unused portion of the ticket to Shove, and paid him $17 for the part she had used.

On January 29, 1897, she again went to Shove's office, and he gave her what remained of the ticket, but, in the meantime, another person had used it for a trip to Chicago and return, using 804 miles more, leaving only 392 miles of mileage in the ticket. This lacked 10 miles of being sufficient to take her to Chicago, so she took it to the ticket office, and paid 42 cents for the balance of her fare, retaining the mileage. She also purchased a sleeper ticket. She boarded the train, and between Minneapolis and St. Paul, the conductor took up the mileage ticket, and declared that it was forfeited. A part of the contract printed on the ticket, and signed by her, reads as follows:

"The right to obtain transportation at a reduced rate, in accordance with the terms of this ticket, is a privilege personal to the person to whom it is issued, whose signature appears hereon, and who is the only lawful holder, and this ticket and the attached mileage strip are not transferable, and no person other than the lawful holder has or can obtain any rights, title or property whatever herein; and if this ticket, or any portion of the mileage strip, is or is attempted to be sold, transferred or given away, or if it be presented in any other manner than as herein provided, or if it be found in the hands of any other person than the lawful holder, it shall have no value whatever, and shall be forfeited, and may be taken up when found by any agent or any of the companies over whose lines it is issued."

As the mileage was sold for two cents a mile, much less than regular rates, this forfeiture clause was reasonable and valid. In order to avoid the effect of this clause, plaintiff claimed she did not authorize Shove to permit any one else to use the mileage. Plaintiff testified that, by the terms of her agreement with Shove, she was to use the book, and pay for each trip as she used it, and that when she returned from her first trip to Chicago she delivered the book to him as security for the balance due on it, and that she intended to take another trip to Chicago the following fall, and use the mileage again, but failed to do so. She and Shove both testified that she gave him no authority to permit some one else to use the book. At the time of her second trip, she was called to Chicago very suddenly to attend a funeral. The ticket by its terms expired one year from the date of its issue. If it were not for this sudden call, she might have taken but one trip during the year, and neither

she nor Shove explain how they expected that, under such circumstances, he would get his money back out of the mileage without selling portions of it to other persons.

For this, and other reasons, appellant contends that the testimony is so unsatisfactory that it will not support a finding that Shove, as between himself and plaintiff, had no authority to permit others to use the mileage. We cannot so hold. True, the contract. provides that, if the ticket "be found in the hands of any other person than the lawful holder," it shall be forfeited. But this forfeiture clause must be strictly construed, and, in our opinion, if the ticket was found in the hands of some one else without plaintiff's fault, it was not forfeited. If plaintiff owned the mileage, and Shove had no authority to permit others to use it, the ticket was not forfeited. But whether Shove owned the mileage, so that, as between him and plaintiff, he had a right to permit others to use it, or whether she owned it, and, if so, whether she authorized him to permit others to use it, were, in our opinion, all questions for the jury.

2. It is further contended that the damages are excessive. As the verdict now stands, it allows about $23 for the loss of the mileage which was taken up, and $100 for damages for what otherwise occurred at the time of taking up the mileage and compelling her to pay fare. She testified that the conductor threatened to put her off the train unless she paid fare, and was very gruff and rough about it. He also told her that she was not the Irma Mueller named on the ticket. This all occurred in the separate room or compartment occupied by her alone in the sleeping car, so that she did not have to suffer the mortification of being thus treated in the presence of other passengers. When the train arrived at St. Paul, the conductor offered to take her money and go to the ticket agent and buy her a new ticket. She gave him the money, and he bought the ticket for her.

The judge charged the jury that this is not a case for punitive damages, and we agree with him. Defendant had satisfactory evidence that the mileage had apparently been forfeited by being used by another person, had listed it with its conductors as forfeited, and this conductor acted on the instructions furnished by such list.

We are of the opinion that, under the circumstances, $100 is excessive as compensation for the injuries in body and mind which plaintiff suffered on that occasion, and that the utmost which can be sustained is $50.

It is therefore ordered that a new trial be granted, unless plaintiff, within 10 days after notice of the filing of the mandate herein in the court below, shall file a release of all of the verdict in excess of $73.21. If such release is filed, then the order appealed from shall be affirmed. Under the circumstances, defendant will not be allowed statutory costs on this appeal.